UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LYNETTE SAETTELE, et al.,

        Plaintiffs,

v.                                                        Case No. 5:08-cv-487-Oc-10GRJ

MARONDA HOMES, INC. OF FLORIDA,

        Defendant.

_____

### REPORT AND RECOMMENDATION[1]

Pending before the Court upon an Order of Reference (Doc. 77) is Defendant's Opposed Motion to Enforce Settlement And For Sanctions (Doc. 76) to which Plaintiff Lynette Saettele ("Saettele") has filed a Response. (Doc. 79.) The Court conducted an evidentiary hearing on July 28, 2010, and as directed by the Court at the hearing, the parties have filed supplemental briefs. (Docs. 93 & 94.) The matter is, therefore ripe for the Court's review. For the reasons discussed below, Defendant's Opposed Motion to Enforce Settlement should be **GRANTED**.

### I. BACKGROUND & FACTS

Counsel for the only remaining Plaintiff in this case – Lynette Saettele ("Saettele") – and counsel for Defendant attended a final pretrial conference in this case on April 21, 2010. During the conference the Court denied the motion by Saettele's counsel to withdraw and set the case for trial for May 3, 2010. The Plaintiff requested

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. §636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

that the parties be permitted to have a settlement conference conducted by the magistrate judge before the case went to trial. Based upon this request the Court instructed the parties to contact the magistrate judge promptly to schedule a settlement conference. That same day – April 21, 2010 – the magistrate judge noticed a settlement conference to be held on April 28, 2010 – before the trial was to commence. On April 27, 2010 Plaintiff filed a "Notice of Pending Settlement" (Docs. 70 & 71) advising that the parties "have tentatively reached settlement in the instant action." The notice further advised that "Settlement documents have been prepared and are in the process of being executed by all parties." Upon receipt of the notice of settlement the Court promptly cancelled the settlement conference and entered an "Order of Dismissal." (Doc. 72.) The case was closed and for all intents and purposes appeared to be resolved.

Nothing further happened in the case until almost two weeks later when Saettele's counsel filed another motion to withdraw as counsel. (Doc. 74.) While the motion recited that counsel had fundamental conflicts with Ms. Saettele, there was no mention in the motion that there was any problem with the settlement and no mention that Saettele had a change of heart about settling the case. The first inkling of any problem with the settlement surfaced on May 21, 2010 when Defendant filed its Motion to Enforce Settlement disclosing that Saettele was refusing to execute the settlement documents because of an objection to the general release language in the settlement agreement. Apparently, Saettele wanted the general release language to have a carve out allowing Saettel to file some type of unspecified administrative claims with the Department of Business Regulation concerning licensing issues which occurred

between 2004-2006. At the hearing conducted by the Court on July 28, 2010 Saettele – for the first time – asserted that her attorney, Danialle Riggins, did not have authority to settle this case for the sum of $60,000.00 – the settlement figure agreed to between counsel for the parties.

At the hearing Defendant presented the testimony of Danialle Riggins, Saettele's counsel who negotiated and agreed to the settlement. Saettele testified in support of her position.

Ms. Riggins testified as to the details of her conversations with Saettele and her conversations with opposing counsel. Riggins testified that she contacted Defendant's counsel to advise that her client wanted to engage in settlement discussions prior to the settlement conference scheduled before the magistrate judge on April 28, 2010. During the morning of April 27, 2010 Ms. Riggins and counsel for Defendant engaged in a series of telephone calls exchanging settlement demands and offers. Counsel for Defendant offered to resolve the claims for $40,000.00. Ms. Riggins counter-offered to settle for $95,000.00, which was rejected by Defendant. Ms. Riggins testified that she telephoned Saettele who told Ms. Riggins she would settle for "60,000.00 in her pocket." Ms. Riggins telephoned counsel for Defendant and conveyed the $60,000.00 settlement offer. After contacting his client and obtaining approval, counsel for Defendant telephoned Ms. Riggins and advised that Defendant agreed to pay $60,000.00. Counsel for Defendant then confirmed the settlement by email to Ms. Riggins. Ms. Riggins telephoned Saettle and advised her that Defendant had accepted Saettel's settlement offer of $60,000.00. Ms. Riggins then filed the Notice of Settlement with the Court.

According to Ms. Riggins, she sent the settlement documents to Saettele on or around April 28, 2010. Ms. Riggins did not receive any response from Saettele until May 4, 2010 when Ms. Riggins received an email from Saettele advising that she was reviewing the settlement documents and understood she had 21 days to accept. There was no mention by Saettele that she had not agreed to settle for $60,000.00. Finally, not until May 11, when Riggins received an email from Saettele, was there any mention of a problem. Saettele's problem with the settlement was the release language, which she believed would prevent her from notifying the Department of Business Regulation of licensing issues regarding the Defendant. Ms. Riggins attempted to resolve the issues with Defendant's counsel concerning changes to the release language. The only change in the release language the Defendant did not agree to change was the carve out of the administrative claims Saettele wanted to file with the Department of Business Regulation.

In short, Riggins's testimony confirmed that Riggins had discussed the $60,000.00 settlement figure with Saettele before making the offer to Defendant and that Saettele had authorized Riggins to settle for the sum of $60,000.00. Immediately after Defendant accepted the settlement Riggins promptly communicated to Saettele that the Defendant had accepted the offer and that the case had been settled. Further, Riggins confirmed that Saettle never told Riggins that Saettele had not agreed to the $60,000.00 settlement figure. The only objection to the settlement by Saettele was with the general release language in the agreement.

Saettele testified in support of her position. While Saettele made it clear in her testimony that she did not believe Riggins handled the case correctly, Saettele's

testimony did not refute Riggins testimony that Saettele had authorized Riggins to settle for $60,000.00, albeit out of desperation. As evidenced by Saettle's stinging email to Ms. Riggins, dated May 11, 2010, (Doc. 91, Ex. A) Saettele was extremely unhappy with the representation provided by Ms. Riggins and questioned the manner and quality of the representation. Glaringly absent, however, from Saettele's testimony was any testimony denying that she had discussed with Ms. Riggins the $60,000.00 settlement offer or denying that she had agreed to accept $60,000.00 in her pocket to settle the case. Notably, the stinging email Saettele authored recounting in chronological detail the events which transpired between Saettele and Riggins contains the following telling statement regarding the settlement: "[Y]ou [Riggins] then told me I have no witnesses and no case and need to make an offer below $60,000. I told you $60,000 out of desperation. You called me back 30 minutes later and told me Maronda [Defendant] took my offer." While the email goes on to complain about the quality of Ms. Riggins representation and that Saettele believed she had been bullied by Ms. Riggins into accepting the offer there is no mention in the email that Saettele did not authorize Riggins to settle the case for $60,000.00. And while it was abundantly clear from Saettele's testimony that she is unhappy with Ms. Riggins and equally unhappy with the settlement there was simply no testimony by Saettele suggesting that she did not authorize Ms. Riggins to settle for $60,000.00.

## II.  DISCUSSION

This motion presents a classic case of "buyer's remorse." Ms. Saettele is unhappy with the representation provided by Ms. Riggins and now with the benefit of newly retained counsel advises that she is displeased with the $60,000.00 settlement

figure. While the Court appreciates Ms. Saettele's frustration, the Court's role is simply to determine whether a binding and enforceable settlement was reached and if so to order the enforcement of the settlement.

Saettele's newly retained counsel offers three reasons challenging the settlement. First, Saettele contends that Defendant has failed to meet its burden of demonstrating that Ms. Riggins had clear and unequivocal authority to settle the case. Second, Saettele contends that because the parties failed to reach agreement carving out Saettele's right to file claims against Defendant with the Department of Business Regulation there was not a meeting of the minds and therefore the settlement in its entirety is not enforceable. Lastly, Saettele claims that she had the right to reject the settlement agreement because the agreement provided her with 21 days to consider the proposed settlement and an additional 7 days to revoke the settlement agreement after execution.

The parties do not dispute the general proposition that the Court has the authority to order the enforcement of a settlement agreement entered into by the parties in a case pending before the Court. *See, e.g. Murchison v. Grand Cypress Hotel Corporation*, 13 F.3d 1483 (11th Cir. 1994); *Rhein Medical v. Koehler*, 889 F. Supp. 1511 (M.D. Fla. 1995). Although the Court dismissed the case on April 27, 2010 after receiving Plaintiff's Notice of Settlement, the Court continued to have jurisdiction to enter further orders during the 60 day period. The instant motion was filed before the expiration of the 60 day period and therefore the Court did not loose jurisdiction over the case.

Because resolution of the instant motion requires the Court to interpret the meaning and effect of the settlement agreement Florida contract law governs with regard to the issue of whether an enforceable agreement was reached. *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347 (11th Cir. 2000). Although the parties never executed the written settlement agreement in this case the Court must still determine whether the parties reached a binding oral agreement because Florida law recognizes and enforces oral agreements. *Bankers Security Ins. Co. V. Brady*, 765 So.2d 870 (Fla. Dist. Ct. App. 2000); *Boyko v. Ilardi*, 613 So.2d 103 (Fla. Dist. Ct. App. 1993).

Defendant, as the party seeking to enforce the settlement agreement, has the burden of showing that the other party assented to the terms of the agreement. *Rhein* 889 F.Supp. at 1516. Where, as here, the settlement agreement was entered into by an attorney on behalf of a client, Defendant, as the party seeking to enforce the settlement agreement, must show that the attorney had the clear and unequivocal authority to settle on the client's behalf. *Murchison*, 13 F3d at 1485; *Weitzman v. Bergman*, 555 So.2d 448, 449-50 (Fla. Dist. Ct. App. 1990).

Defendant has met its burden of showing that Saettele assented to the terms of the settlement agreement and that Ms. Riggins, as counsel for Saettel, had clear and unequivocal authority to settle the case for $60,000.00. Defendant presented the testimony of Ms. Riggins, who testified without contradiction,entry that during the morning of April 27, 2010 she discussed the various settlement offers and counter-offers with Saettele. According to Ms. Riggins, Saettele authorized her to convey a demand of $95,000.00 to Defendant's counsel that morning. The Defendant countered the offer

7

with a settlement offer of $45,000.00. This offer was communicated to Saettele and rejected. According to Ms. Riggins, Saettele, then told Ms. Riggins that she would settle for "$60,000.00 in her pocket." Ms. Riggins conveyed this offer to counsel for Defendant, who contacted his client and then advised Ms. Riggins that his client had agreed to settle for $60,000.00. Defendant's counsel immediately sent an email to Ms. Riggins confirming that the Defendant had accepted the settlement offer. (Doc. 76, Ex. B.) Ms. Riggins then telephoned Saettele and advised that the Defendant had accepted the $60,000.00 settlement demand. According to Ms. Riggins, Saettele never told Ms. Riggins that Saettele had not authorized Riggins to settle for $60,000.00. Ms. Riggins further testified that she did not intend to take a contingency fee for representing Saettele so that Saettele would receive the full benefit of the $60,000.00 payment, minus of course the required percentage for taxable wages, which were required to be paid pursuant to law. Indeed, the first time Saettele took the position in this case that she had not agreed to settle for $60,000.00 was at the July 28 evidentiary hearing. Even then when Saettele testified at the hearing she never once said that she did not give Ms. Riggins authority to settle for $60,000.00 or that she objected when Ms. Riggins telephoned her and confirmed that Defendant had accepted the $60,000.00 settlement offer.

While there is little doubt that Ms. Saettele had second thoughts about settling for $60,000.00 – particularly months later when she retained new counsel, who had a financial stake in the outcome of the case – buyer's remorse or a change in heart when presented with the settlement documents for signature is simply not a reason to back out of a binding settlement agreement. *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d

1207, 1209 (5th Cir. 1981). Accordingly, the Court concludes that Saettele's attorney had clear and equivocal authority to settle the case for the sum of $60,000.00 and that the settlement offer was communicated to the Defendant, confirmed in writing by the Defendant and then later confirmed with Saettele by Ms. Riggins without objection. Plaintiff then confirmed the settlement with the Court when the notice of settlement was filed on April 27, 2010.

Having found that there is a binding agreement between the parties to settle the case for the sum of $60,000.00 the Court must next address Plaintiff's alternative argument that there was never a meeting of the minds with regard to the release language in the settlement agreement and therefore even though there may have been agreement as to the amount the agreement is not enforceable because the general release was a material aspect of the agreement. While there is conflicting authority as to whether the terms and language of a release are a material part of a settlement agreement – *compare Rolex Watch U.S.A. v. Bonney*, 546 F.Supp. 2d 1304 (M.D. Fla. 2008)(settlement not enforceable where parties did not agree on execution of general release) *with McDonnell v. Engine Distributors*, 2007 WL 2814628 *8 (D. N.J. 2007)("[t]he disputed terms-concerning the scope of the release ... all speak to the settlement's implementation. They are not, however, essentials of the settlement.") – the Court need not resolve this issue because Defendant represented at the hearing that it would waive the requirement that the Plaintiff execute a written release. Thus, the Defendant has waived the requirement that Plaintiff execute a general release as a condition to settlement. Upon payment of the agreed upon settlement amount the Court can dismiss the case with prejudice even though Plaintiff has refused to sign a general

9

release. Where, as here, a party refuses to execute a general release as part of the settlement, the agreement to settle for a sum certain is, nonetheless, still enforceable if the defendant waives execution of the general release. This is so because the release is for the benefit of the defendant and not for the benefit of the other party. *Morris v. Waste Management of Virginia, Inc.*, 94 F.Supp.2d 586, 588 (E.D. Va. 2000). Accordingly, even though there was a factual dispute as to the language to be included in the general release, because Defendant agrees to waive this requirement the lack of agreement regarding the release language is not a ground to prevent enforcement of the settlement.

The last issue raised by Saettele – again for the first time at the hearing – is that the settlement is not enforceable because the proposed settlement agreement as drafted allows Plaintiff both 21 days to consider the proposed settlement before signing it and an additional 7 days to revoke her acceptance. Plaintiff's argument takes several different tacks. First, Plaintiff argues that even assuming the Court finds there was an oral agreement to settle for $60,000.00, the language in the draft of the settlement agreement affirmatively provides the Plaintiff with a 21 day window to think about the settlement and revoke it. Further, the Plaintiff contends that even if the Plaintiff had signed the settlement agreement as drafted she, nonetheless, had an absolute right to revoke the settlement within 7 days after signing it. Secondly, Plaintiff argues that separate from the fact that the "21 day/7day" language was included in the draft of the settlement agreement, under the Older Workers Benefits Protection Act ("OWBPA") she has an absolute right to reject the offer within 21 days and an absolute right to revoke the offer 7 days after signing it. The Court will address each argument in turn.

With regard to Plaintiff's argument that she had 21 days to consider the written settlement agreement and then 7 days to revoke it if she signed it, those time limits were never part of the settlement terms agreed to by the parties. There was no testimony or any evidence that the attorneys or the parties discussed a 21 day period to consider the settlement when the settlement was agreed to on April 27, 2010. The first mention of the 21 day requirement was when the Defendant unilaterally included the provision in the draft of the settlement agreement. The parties never agreed to the language in the written settlement agreement. Moreover, the parties never executed the settlement agreement. Therefore, because the language was never agreed to and the settlement agreement was never executed, the Plaintiff cannot seek to rely upon provisions in an agreement she refused to execute.

There is another fundamental flaw with Plaintiff's argument. Even assuming that the unexecuted settlement agreement in some way provided Plaintiff with a 21 day window to consider the settlement agreement, the first time Plaintiff advised that she revoked her agreement to settle for $60,000.00 was at the hearing on July 28, 2010 – well past 21 days from the April 27, 2010 agreement to settle.

That leaves one remaining argument challenging enforcement of the settlement. Plaintiff contends that separate from the draft of the written settlement agreement, Plaintiff had an absolute right under the OWBPA to a 21 day period to consider the settlement and an absolute right to revoke the settlement within 7 days of signing an agreement. This is the one issue raised at the hearing which concerned the Court and prompted the Court to require the parties to brief the issue. The Court having reviewed the supplemental briefing on this issue and having reviewed the relevant case law

11

concludes that these provisions of the OWBPA are not an impediment to enforcement of the settlement in this case.

The provisions of the OWBPA with regard to employee waivers and releases under the ADEA is rather straightforward. "To protect the rights and benefits of older workers, Congress amended the ADEA in 1990 through the OWBPA by adding, inter alia, 29 U.S.C. § 626(f), which regulates employee waivers and releases under the ADEA." *Powell v. Omnicom*, 497 F.3d 124, 131 (2d Cir. 2007)(*citations omitted*). Under the OWBPA, an individual may waive his rights only if the waiver is "knowing and voluntary." 29 U.S.C. § 626(f)(1). Section 626(f) provides specific statutory requirements for a "knowing and voluntary" waiver that the employer must meet in order for an employee to waive her ADEA claims. *Powell* at 131. The failure to meet these requirements renders the release unenforceable irrespective of general contract principles. *Id.* Included among the waiver provisions under § 626(f)(1) are the requirements that the individual be given "a period of at least 21 days within which to consider the agreement and "a period of at least 7 days following execution of such agreement ... [to] revoke the agreement." 29 U.S.C. § 626(f)(1)(F), (G); *Powell* at 131-32.

The requirement that an employee be given 21 days to consider the agreement and 7 days to revoke it after execution do not, however, apply to actions that are filed in court and allege age discrimination under 29 U.S.C. § 623. *Powell* at 132. Instead, where, as here, the settlement is made during a contested lawsuit where the employee

is represented by counsel[2] – as opposed to a waiver made by the employee before any court proceeding is initiated – section 626(f)(2) applies, which only requires that the "individual [be] given a reasonable period of time within which to consider the settlement agreement." *Id.* A reasonable period of time has been interpreted to mean "reasonable under all the circumstances including whether the individual is represented by counsel or has the assistance of counsel." *Id.,* 29 C.F.R. § 1625.22(g)(4).

There is little question that Ms. Saettele had more than reasonable period of time to consider settlement. This case had been litigated over a period of almost two years. Ms. Saetelle was one of a group of five employees who filed this action together as named plaintiffs. The other four Plaintiffs had all settled their respective claims so there is no question that Saettele was intimately familiar with the facts of the case, the claims asserted and the terms of settlement.

The settlement was agreed to on April 27, 2010. The first hint that Saettele had second thoughts about the settlement did not occur until at the earliest on May 11, 2010, when Saetelle sent the stinging email to Ms. Riggins and then Ms. Riggins sent an email to Defendant's counsel on May 13 raising issues only as to the release language in the draft of the settlement agreement. Thus, Saettele had a minimum of fourteen days to fully consider the settlement. Even then she did not revoke the settlement but rather only questioned the language in the agreement and the scope of the general release.

---

[2] *McNamara v. Tourneau, Inc.,* 464 F.Supp. 2d 232, 239 (S.D.N.Y. 2006), relied upon by Plaintiff, applied the 21 day consideration period under the OWBPA in a pending lawsuit but appropriately did so because the Plaintiff was proceeding *pro se* without the benefit of counsel as part of the Court's early court ordered mediation program.

There is a very pragmatic reason for imposing waiver requirements in age discrimination claims. "Congress imposed statutory requirements for waiver to ensure that 'older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA.'" *Powell* at 132. Like the worker in *Powell* – who had litigated for two years but who only had a few hours between the beginning of settlement negotiations and assenting to the settlement – the period of time Saetelle had to consider the settlement was more than reasonable under the circumstances. This conclusion is consistent with other cases, which have considered the issue of whether a plaintiff in an age discrimination lawsuit has been afforded a reasonable opportunity to consider settlement. *See, e.g. Eswarappa v. Shed Inc./Kid's Club*, 685 F.Supp.2d 229, 238 (D. Mass. 2010 (plaintiff had an entire business day to consider settlement agreement and claims had been litigated for three and a half years); *Mareno v. Madison Square Garden, L.P.*, 21 Fed. Appx. 74 ( 2d Cir. 2001)(OWPA's reasonable time requirement met during one-day pre-trial conference that resulted in settlement agreement after two years of trial preparation and prior settlement discussions); *Manning v. New York University*, No. 98 Civ 3300(NRB), 2001 WL 963982 at *9 (S.D. N.Y. 2001).

In addition to the fact that the Plaintiff had more than a reasonable period of time to consider the settlement between April 28, 2010 and May 11, 2010, the fact remains that Plaintiff did not attempt to revoke the $60,000.00 settlement figure until three months later at the beginning of the evidentiary hearing on July 28, 2010. Plaintiff, therefore, waited three months to attempt to revoke the settlement, a period of time well

14

past the twenty-one day time period in the OWBPA for considering a waiver and settlement of an ADEA claim.

Accordingly, for all these reasons, the Court concludes that the Plaintiff had more than a reasonable amount of time to consider the settlement and thus her decision to settle and waive her ADEA claims was knowing and voluntary. Plaintiff should not now be permitted to revoke a settlement she agreed to, authorized her attorney to accept and to attempt to revoke the settlement months after the settlement had been agreed to and the case dismissed.

### III. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Opposed Motion to Enforce Settlement should be **GRANTED**. After payment of the settlement funds all of the Plaintiff's claims in this case should be dismissed with prejudice, with each party to bear their own respective attorney's fees and costs.[3]

**IN CHAMBERS** in Ocala, Florida, on this 7th day of September 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
    The Honorable Wm. Terrell Hodges
    Senior United States District Judge

    Counsel of Record

---

[3] Defendant's request to enter sanctions against Plaintiff is due to be denied. While sanctions may be granted in a particularly egregious situation, the Plaintiff's challenge to the release language in the settlement agreement was not completely without any support.